**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **JOE PAT BEASLEY,** | § | |
| | § | |
| **Plaintiff,** | § | **CIVIL ACTION NO.** |
| **v.** | § | |
| | § | **SA-04-CA-0866 FB (NN)** |
| **AVERY DENNISON CORPORATION;** | § | |
| **and RENNER, OTTO, BOISELLE &** | § | |
| **SKLAR, LLP,** | § | |
| | § | |
| **Defendants.** | § | |

<u>**ORDER GRANTING PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF**</u>
<u>**DOCUMENTS (DOCKET ENTRY 53)**</u>

The matter before the Court is plaintiff's motion to compel defendants to produce

documents in response to plaintiff's request for production (Docket Entry 53). Plaintiff filed his

motion on July 6, 2006, requesting an Order requiring defendants to produce without redaction

all documents set forth in their Redaction Log and Privilege Log[1] except for the following:

(1) Privilege Documents 1-3, 5, 7-13, 23, 59, 82- 84, 93-97, 99, 112, 146, 162, 163, and 169;

(2) Redaction Documents 1A, 2, 2A, 10-14, 14A, 15B, 14C, 14D, 14E, 14H, 14I, 14J, 14K, 14L,

14M, 14N, 14Q, 14T, 14U, 15, 16A, 22-24, 38, 47A-47M, 48, 52, 53, 53A, 54, 55, 55A, 55B, 65,

67, 67A, 68, 69, 69A, 70, 71, 71A-71E, 72, 72D, 73, 73A, 74, and 74A.  Defendants responded

on July 17, 2006, claiming that the documents sought by plaintiff are privileged documents

exempt from discovery pursuant to the attorney client and work product exceptions to the general

---

[1] Docket Entry 53, Exh. 8.

discovery rules.  Having considered plaintiff's motion to compel[2] and defendant's response,[3] the motion is hereby **<u>GRANTED</u>** for the reasons set forth below.

**Motion to Compel**

Plaintiff commenced this action claiming that defendants committed fraud and negligence, and breached their fiduciary duties to him concerning the prosecution of a patent application before the United States Patent and Trademark Office ("PTO").  Plaintiff made a discovery request to defendants seeking the production of documents relating to the patent prosecution.  These documents include communications between attorneys of defendant law firm Renner, Otter, Boiselle and Sklar, LLP ("Renner Otto") and defendant Avery Dennison Corporation ("Avery").  Defendants responded and objected to plaintiff's request for document production claiming, among other things, that the documents sought were protected from discovery by attorney client privilege and the work product exception.  Defendants refused to produce the documents.

Plaintiff filed the instant motion to compel claiming that defendants had entered into an agreement with plaintiff to prosecute the patent application.  Plaintiff asserts that the relationship between plaintiff and defendants preclude any assertion of privilege concerning documents related to prosecution of the patent and the invention, personalized postage stamps.

Defendants assert that the documents sought by plaintiff fall into three general categories: 1) communications between Avery and its in-house counsel regarding business negotiations with plaintiff's company, USPPS Ltd. (described on the Privilege and Redaction Logs as

---

[2] Docket Entry 53.

[3] Docket Entry 54.

2

communications regarding USPPS, supply agreement, license agreement, and personalized

postage); 2) communications between Avery or its in-house counsel and attorneys at Renner Otto

regarding business negotiations with USPPS; and 3) communications between Avery or its in-

house counsel and attorneys at Renner Otto regarding the patent prosecution.  Defendants deny

any special relationship between defendants and plaintiff that would preclude defendants  from

asserting attorney client and work product privilege exceptions to the discovery rules.

**Attorney Client and Work Product Privilege**s

Discovery is governed by, *inter alia*, Federal Rule of Civil Procedure 26.  Rule 26

provides a party with the authority to obtain discovery of any matter that is "relevant to the claim

or defense of any party, including the existence, description, nature, custody, condition, and

location of any books, documents, or other tangible things and the identity and locations of

persons having knowledge of any discoverable matter . . . .  Relevant information need not be

admissible at trial if the discovery appears reasonably calculated to lead to the discovery of

admissible evidence."[4]  Discovery of documents or other tangible things prepared in anticipation

of litigation may be had only on a showing of substantial need and that the party is unable

without undue hardship to obtain the substantial equivalent of the materials by other means.[5]

Rule 26 recognizes the claim of privileged information as an exception to the general discovery

rule and requires the party withholding the information to expressly make the claim of privilege

and describe the nature of the documents, communications, or things not produced without

---

[4] Fed. R. Civ. P. 26(b)(1).

[5] Fed. R. Civ. P. 26(b)(3).

revealing the information that is privileged.[6]   Accordingly, the party asserting a privilege

exception from discovery bears the burden of demonstrating the applicability of the privilege.[7]

The attorney client privilege is the oldest of the privileges protecting confidential

information from discovery.  The privilege protects a client's communications made in

confidence to his or her attorney for the purpose of obtaining legal advice and also protects an

attorney's communications to a client to the extent that the client's confidential communications

would be disclosed.[8]  The central purpose of the privilege is to encourage "full and frank"

communications between lawyers and their clients, thereby promoting the "broader public

interests of observance of the law and the administration of justice."[9]

The work product doctrine differs from the attorney client privilege in that it covers only

those documents or other tangible things produced by an attorney in anticipation of litigation.

"The purpose of the work product privilege is to further 'the interests of clients and the cause of

justice' by shielding the lawyer's mental processes from his adversary."[10]   The litigation need not

be imminent to for the privilege to apply.[11]  In the Fifth Circuit, documents and other tangible

things are produced "in anticipation of litigation" and qualify for the work product privilege  "as

long as the primary motivating purpose behind the creation of the document [is] to aid in possible

---

[6] Fed. R. Civ. P. 26(b)(5).

[7] **In re Santa Fe Int'l Corp.**, 272 F.3d 705, 710 (5th Cir. 2001).

[8] **Hodges, Grant & Kaufmann v. U.S. Government, Dept. of the Treasury, I.R.S.**, 768 F.2d 719, 720-21 (5th Cir. 1985).

[9] **Willy v. Administrative Review Bd.**, 423 F.3d 483, 495 (5th Cir. 2005).

[10] **In re Grand Jury Subpoena**, 220 F.3d 406, 408 (5th Cir. 2000) (citing **Hickman v. Taylor**, 329 U.S. 495, 511 (1947)).

[11] **In re Kaiser Aluminum & Chemical Co.**, 214 F.3d 586, 593 (5th Cir. 2000).

future litigation."[12]

**Discussion**

<u>Work Product Privilege</u>

Defendants contend that the documents requested by plaintiff are shielded by the work product and attorney client privileges.  However, defendants' brief concentrates on the attorney client privilege and does not specifically address the work product doctrine.

As a general rule, the work product privilege may be applicable to documents generated in the context of the patent application process.

> With respect to documents prepared during nonadversarial *ex parte* patent applications, the work product immunity applies if the primary concern of the attorney is with future litigation rather than the ongoing patent application prosecution. Alternatively, the work product immunity does not apply if the primary concern is with claims raised in the *ex parte* patent application prosecution.[13]

None of the general categories used by defendants to classify the documents requested by plaintiffs expressly identifies the documents as being produced in anticipation of litigation. Defendants describe the documents as communications concerning business negotiations over licensing, and other agreements and communications concerning the patent application prosecution.  Regardless, the work product privilege protects disclosure from an actual or potential adversary.  Defendants have not shown that plaintiff was an actual or potential adversary when the documents were created.  Accordingly, defendants have not demonstrated

---

[12] <u>Id.</u> (quoting <u>United States v. El Paso Co.</u>, 682 F.2d 530, 542 (5th Cir. 1982)); <u>United States v. Davis</u>, 636 F.2d 1028, 1040 (5th Cir. 1981).

[13] <u>Conner Peripherals, Inc. v. Western Digital Corp.</u>, No. C93-20117 RMW/EAI, 1993 WL 726815, at *4  (N.D.Cal. June 8, 1993) (citing <u>Hercules Inc. v. Exxon Corp.</u>, 434 F.Supp. 136, 152 (1977)).

that the work product privilege shields the identified documents from discovery.

Attorney Client Privilege

The central issue in this matter is plaintiff's relationship to the attorneys named in the revocation and power of attorney document executed by plaintiff and presented to the PTO.  The document revoked all previous powers of attorney in plaintiff's patent case and named John Cornell ("Cornell"), Armand P. Boisselle ("Boisselle"), William C. Tritt ("Tritt"), Neil A. DuChez ("DuChez"), and Heidi A. Boehlefeld ("Boehlefeld") as plaintiff's attorneys in fact to prosecute his patent.[14]  Plaintiff seeks documents concerning him, his company, or the patent application that were authored by or sent to these attorneys.

Defendants strenuously argue that plaintiff did not have an attorney client relationship with any of these attorneys.  They assert that Cornell is in-house counsel for Avery, while Tritt, DuChez, Boisselle, and Boehlefeld are attorneys with Renner Otto who Avery employed to prosecute plaintiff's patent application.  Defendants argue that Avery retained the services of the Renner Otto attorneys, employed Cornell, and paid the attorneys for their services.  According to defendants, plaintiff's relationship with the attorneys only involved the exchange of technical information concerning the invention, and therefore, plaintiff does not have a right to the documents authored or received by the named attorneys.

Defendants rely on a number of patent cases which support their asserted position. However, the cases, **Sun Studs, Inc. v. Applied Theory Associates, Inc.,**[15] **Levin v. Ripple**

---

[14] Docket Entry 53, Exh. 3 at 4.

[15] 772 F.2d 1557 (Fed. Cir. 1985).

**Twist Mills, Inc.**,[16] and **University of West Virginia Bd. of Trustees v. VanVoorhies**,[17] all

involved the disqualification of patent counsel from pending litigation.[18]  In **Sun Studs**, the

predominant case,

> the Federal Circuit held that an inventor under an obligation to
> assign his or her rights in a patent application to a particular
> company does not *ipso facto* develop an attorney-client
> relationship with the company's patent counsel, who prepares and
> prosecutes the patent application, even though the inventor gave
> the company's patent counsel the power of attorney to act on his or
> her behalf in the PTO.  **Sun Studs**, 772 F.2d at 1567-70. In support
> of the holding, the Federal Circuit noted that the inventor's
> obligation to assign his or her patent rights to a company includes
> an obligation to assist the company in obtaining those patent rights,
> and the inventor's power of attorney to the company's patent
> counsel is given on behalf of the company, not the inventor.  **Id.** at
> 1569.[19]

The circumstances in the present case are readily distinguishable from those in **Sun**

**Studs**.  Here, plaintiff had no connection to defendant Avery prior to conceiving his invention.

He initially prosecuted the patent application on his own behalf with counsel of his choosing.

After entering licensing negotiations, Avery prevailed upon plaintiff to discharge his patent

counsel and appoint counsel of Avery's choosing, the Renner Otto attorneys and Avery's in-

house counsel Cornell, to prosecute the patent.  Avery agreed to pay the fees associated with

---

[16] 416 F. Supp. 876 (E.D. Pa. 1976).

[17] 33 F.Supp.2d 519 (N.D. W.Va. 1998).

[18] Notably, the inventor in **VanVoorhies** admitted to patent counsel that he knew that he was not the patent counsel's client.  **Id.** at 520.

[19] **Massachusetts Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.**, 167 F.Supp.2d 108, 120 (D.Mass. 2001) (explaining **Sun Studs**).

prosecuting the patent application.[20]  At Avery's behest, plaintiff executed a revocation and power of attorney, effectively discharging his patent counsel and appointing Cornell and the Renner Otto attorneys to prosecute his patent application.

Significantly, for the purpose of this motion to compel, DuChez communicated directly with plaintiff concerning the prosecution of the patents.  Some of these communications were copied to Cornell and Alan Green ("Green"), Vice President of Convertin Ventures, Avery's representative.  Other communication sent to plaintiff by DuChez were not copied to Green.[21] Mr. Duchez also copied plaintiff on a communication to Mr. Green concerning strategy about obtaining the patent over the rejection by the PTO, as well as the commercial viability of pursuing the patent application.[22]

Considering that the purpose of the attorney client privilege is to protect confidential information exchanged between attorneys and their clients to obtain legal advice, the Court is not persuaded that the documents requested by plaintiff are privileged.  The evidence in the record shows a joint effort between the parties to obtain a patent for personalized postage stamps for plaintiff, the inventor.  Defendant Avery was to benefit from the patent through the licensing agreement that it was negotiating with plaintiff.  The parties freely exchanged information about the prosecution of the patent.  Furthermore, it does not appear that any of the requested documents concern legal advice provided solely for Avery's benefit.

There is no question that Avery had an attorney client relationship with Renner Otto and

[20] Docket Entry 53, Exh. 3 at 3.

[21] Docket Entry 53, Exh. 5.

[22] **Id.**

Cornell.  However, this relationship does not preclude plaintiff from demonstrating that he had a joint attorney client relationship with the attorneys named in the power of attorney document. The law recognizing the existence of an attorney client relationship among clients and attorneys allied in a common legal cause is well established.[23]  In the context of patent law, parties engaged in prosecuting a patent application typically have a common interest in obtaining the greatest protection and exploiting the patent to the fullest degree,[24] and the determination of the professional relationship does not turn on the payment of fees or the existence of a retainer agreement.[25]

Accepting without deciding that plaintiff may be able to show a joint attorney client relationship, defendants' argument that they may not be compelled to provide the requested documents because plaintiff did not have an attorney client relationship with the attorneys named in the power of attorney document is without merit.  Furthermore, the confidentiality of any of the documents sought is adequately protected by the stipulated protective Order entered on May 1, 2006.[26]

## Conclusion

Based on all the foregoing, I find that defendants have not satisfied their burden to show that the documents requested are privileged and exempt from discovery.  Accordingly, plaintiff's motion to compel is hereby **<u>GRANTED</u>**.  Defendants shall produce the documents identified by

---

[23] **<u>Hillerich & Bradsby Co. v. MacKay</u>**, 26 F.Supp.2d 124, 126 (D.D.C. 1998).

[24] **<u>Id.</u>**

[25] **<u>Id.</u>** (citing **<u>E.F. Hutton & Co. v. Brown</u>**, 305 F.Supp. 371, 388 (S.D.Tex.1969) for the observation that an attorney client relationship does not depend on the payment of a fee).

[26] Docket Entry 49.

plaintiff's motion within fourteen days of the entry of this Order.

It is so ORDERED.

**SIGNED** on October 4, 2006.

*Nancy Stein Nowak*

NANCY STEIN NOWAK
UNITED STATES MAGISTRATE JUDGE