## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **JOE PAT BEASLEY,** | § | |
| | § | |
| **Plaintiff,** | § | **CIVIL ACTION NO.** |
| **v.** | § | |
| | § | **SA-04-CA-0866 FB (NN)** |
| **AVERY DENNISON CORPORATION;** | § | |
| **and RENNER, OTTO, BOISSELLE &** | § | |
| **SKLAR, LLP,** | § | |
| | § | |
| **Defendants.** | § | |

## MEMORANDUM AND RECOMMENDATION
## REGARDING DEFENDANTS' MOTION TO DISMISS

**TO:    Hon. Fred Biery**
**United States District Judge**

This memorandum and recommendation addresses the motion to dismiss and for sanctions[1] filed by the defendants in this case.  I have jurisdiction to enter this memorandum and recommendation under 28 U.S.C. § 636(b) and the district court's order referring all pretrial matters to me for disposition by order or to aid the district court by recommendation where my authority as a Magistrate Judge is statutorily constrained.[2]  After considering the motion, I recommend dismissing this case for lack of subject matter jurisdiction.

### Jurisdiction

The district court has original jurisdiction over this case under 28 U.S.C. § 1332(a)(1) because the plaintiff and defendants are citizens of different states and the amount in controversy exceeds $75,000.00.

---

[1]Docket entry # 91.

[2]*See* docket entry # 14.

**The Plaintiff's Claims**

Plaintiff Joe Pat Beasley filed his original complaint on September 24, 2004.[3]  In his complaint, Beasley sued defendants Avery Dennison Corporation (Avery) and Renner Otto Boisselle & Sklar LLP (Renner Otto) for negligence and breach of fiduciary duty.  These claims arose from two rejected patent applications concerning Beasley's idea for personalized postage stamps (the patent applications).  Beasley alleged that the defendants had a fiduciary duty to him and owed him a duty of care arising from the defendants' assumption of responsibility for the prosecution of his patent applications.[4]  Beasley complained that the defendants breached their duties to him by taking certain actions during the course of the prosecution of the patent applications.[5]

On December 17, 2004, Beasley filed his first amended complaint, adding a claim for fraud.[6]  Beasley alleged that the defendants induced him to hire the Litman Law Firm and turn over patent prosecution to them, leaving him unrepresented with regard to his patent.[7]  The defendants moved to dismiss the complaint on grounds that Beasley's damages allegations did not articulate any actual harm that Beasley suffered as a result of the defendants' actions.  The district court accepted my recommendation on that motion,[8] dismissed the first amended

---

[3]*See* docket entry # 1.

[4]*See* docket entry # 1, ¶¶ 22 & 29.

[5]*See* docket entry # 1, ¶ 30.

[6]*See* docket entry # 15.

[7]*See* docket entry # 15, ¶ 33.

[8]*See* docket entry # 32, p. 10.

complaint, and granted Beasley's request to amend his complaint to plead with more specificity.[9]

On September 2, 2005, Beasley filed his second amended complaint.[10]  The second amended complaint added a cause of action for fraud and an actual damages claim alleging the deprivation of the ability to recover for patent infringement.[11]  Beasley also alleged that he was deprived of "owning a patent to his detriment in negotiating rights thereunder with Avery Dennison and with regard to defending against a charge of invalidity."[12]  The defendants have moved to dismiss Beasley's second amended complaint for lack of subject matter jurisdiction.

**Standards Applicable to a Motion to Dismiss for Lack of Subject Matter Jurisdiction**

Rule 12(b)(1) of the Federal Rules of Civil Procedure permits a defendant to move to dismiss a complaint based on a lack of subject matter jurisdiction.[13]  If a defendant challenges subject matter jurisdiction under Rule 12(b)(1), the plaintiff has the burden of demonstrating subject matter jurisdiction.[14]  Where the defendant challenges the existence of subject matter jurisdiction in fact—a factual attack—the district court may consider matters outside the pleadings such as testimony and affidavits.[15]  "A court may base its disposition of a motion to dismiss for lack of subject matter jurisdiction on (1) the complaint alone; (2) the complaint

---

[9]*See* docket entry # 36.

[10]*See* docket entry # 36.

[11]*See* docket entry # 37, ¶ 44.

[12]*See* docket entry # 37, ¶ 22.

[13]*See* FED. R. CIV. P. 12(b)(1).

[14]*See Cross Timbers Concerned Citizens v. Saginaw*, 991 F. Supp. 563, 566 (N.D. Tex. 1997).

[15]*See Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980).

supplemented by undisputed facts; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."[16]  "[W]here subject matter jurisdiction is being challenged, the trial court is free to weigh the evidence and resolve factual disputes in order to satisfy itself that it has the power to hear the case."[17]  "Subject matter jurisdiction may not be waived, and the district court 'shall dismiss the action' whenever 'it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter.'"[18]

### Whether Subject Matter Jurisdiction Exists in this Case

The defendants argue that the district court lacks subject matter jurisdiction in this case because Beasley lacks standing to bring this lawsuit.  The defendants maintain that Beasley lacks standing because he assigned his right to his patent applications to USPPS, Ltd. prior to filing the lawsuit.  The defendants maintain that Beasley transferred his ownership rights over the patent applications, including the right to sue for infringement and to receive royalties from the patent applications, in a July 3, 2001 Intellectual Property Assignment executed between Beasley and USPPS, Ltd.

"Standing to sue is the 'core of Article III's case-or-controversy requirement, and the party invoking federal jurisdiction bears the burden of establishing its existence.'"[19]  "[S]tanding is determined as of the date of the filing of the complaint, and subsequent events do not deprive

---

[16]*Robinson v. TCI/US West Communications*, 117 F.3d 900, 904 (5th Cir. 1997).

[17]*Montez v. Dep't of the Navy*, 392 F.3d 147, 149 (5th Cir. 2004).

[18]*Avitts v. Amoco Prod. Co.*, 53 F.3d 690, 693 (5th Cir. 1995) (quoting FED. R. CIV. P. 12(h)(3)).

[19]*Webb v. City of Dallas*, 314 F.3d 787, 791 (5th Cir. 2002) (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 104 (1998)).

the court of jurisdiction."[20]  "Generally, one seeking money damages for patent infringement must have held legal title to the patent at the time of the infringement."[21]  "[T]o assert standing for patent infringement, the plaintiff must demonstrate that it held enforceable title to the patent at the inception of the lawsuit."[22]

To show that Beasley does not hold legal title to his patent applications, the defendants presented a copy of the Intellectual Property Assignment.[23]  That document consists of five pages.  The first and second pages contain the substance of the assignment.  The third page states that the "instrument was acknowledged by Joe Pat Beasley on this the 3rd day of July 2001" and reflects a notary's signature.  The fourth page is titled "Exhibit A, Intellectual Property."  The fifth page is titled "Exhibit B, Third Party Rights."

The first two pages identify Beasley as the "assignor" and USPPS, LTD. as the "assignee."  Therein, Beasley "does hereby SELL, ASSIGN, and CONVEY unto" USPPS, LTD. "any and all right, title, interest" to his Intellectual Property.  Exhibit A identifies Intellectual Property as "[a]ll tangible and intangible information and Proprietary rights relating to USPostables! and USPPS, including, but not limited to, procedures, processes, notes, records, techniques, regulatory information, materials, plans and strategies relating thereto."  The assignment specifically identified "[a]ll applications for patent or like protection on said

---

[20]*Carr v. Alta Verde Indus.*, 931 F.2d 1055, 1061 (5th Cir. 1991).  *See also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 571 n.5 (1992) ("[S]tanding is to be determined as of the commencement of suit. . . .").

[21]*Rite-Hite Corp. v. Kelley Co*., 56 F.3d 1538, 1551 (Fed. Cir. 1995).

[22]*Paradise Creations v. UV Sales*, 315 F.3d 1304, 1309 (Fed. Cir. 2003).

[23]*See* docket entry # 93, exh. E.

Intellectual Property whether now or hereafter applied for made by (joined in by) Assignor or his legal representative. . . " as included in the assignment.  In addition, the assignment assigned "[a]ll rights of action on account of past, present and future unauthorized use of said Intellectual Property and for infringement of said Intellectual Property and like protection. . . ."  The assignment concluded by stating that Beasley "covenants that no person or entity owns any right, title or interest of any kind in or to, or has any other rights whatsoever with respect to, the Intellectual Property, except for those persons or entities set forth in Exhibit B. . . ."  Exhibit B designates "None" as third party rights.  This assignment establishes that Beasley assigned his rights to the patent applications to USPPS on July 3, 2001—over three years before he filed this lawsuit.  Consequently, the document shows that Beasley had no legal title to the patent applications that serve as the basis of his claims when he filed this lawsuit.[24]

In response, Beasley asserts that he does not recall signing the assignment, and that if he did sign the assignment, he signed it as a result of a mutual mistake.  Beasley maintains that he never intended to assign his rights to his intellectual property until after he obtained a patent.  Beasley states that he doubts that he executed the assignment before a notary in San Antonio, Texas, on July 3, 2001, because he has airline ticket records showing that he was in Telluride, Colorado, from June 28, 2001 to July 5, 2001.[25]  Beasley asks for leave to file an amended complaint to add USPPS as a plaintiff.

Although a contract may be rescinded for a mutual mistake, rescission based on mutual mistake is an equitable remedy.

---

[24]*See* FED. R. CIV. P. 12(b)(1).

[25]*See* docket entry # 114, p. 5.

> Equity may permit rescission based on a unilateral mistake only when: (1) the mistake is of so great a consequence that to enforce the contract would be unconscionable; (2) the mistake relates to a material feature of the contract; (3) the mistake occurred despite ordinary care; and (4) the parties can be placed in status quo, *i.e.*, the rescission must not prejudice the other party except for the loss of the bargain.[26]

Beasley has not shown that these circumstances apply.

To show that the assignment resulted from a mutual mistake, Beasley presented a letter from Al Green, Vice President of Converting Ventures, stating the following: "Avery Dennison will assume responsibility for prosecution of the patent application. . . . You are the inventor and have not assigned it to any other person or organization. . . .You will retain ownership of the application and of the patent issuing from the application."[27] This evidence indicates that Green was unaware that Beasley had assigned his intellectual-property rights, but it does not prove that the assignment was made as a result of mutual mistake. Beasley also presented what appears to be an excerpt from an airline's billings records.[28] Beasley offered the document as billing records from Southwest Airlines. The records reflect a purchase of a flight from San Antonio, Texas, to Albuquerque, New Mexico, on June 28, 2001, and a purchase of a flight from Albuquerque to San Antonio on July 5, 2001. This evidence indicates that Beasley purchased airline tickets to travel on June 28, 2001 and July 5, 2001, but it does not prove that Beasley was not in San Antonio on July 3, 2001 or that the assignment was made as a result of mutual mistake. Beasley's evidence does not prove that the purported mistake is of so great a

---

[26]*Cigna Ins. Co. of Tex. v. Rubalcada*, 960 S.W.2d 408, 412 (Tex. App.—Houston [1 Dist.] 1998, no pet.).

[27]*See* docket entry # 115, exh. L.

[28]*See* docket entry # 115, exh. J.

consequence that enforcing the assignment would be unconscionable.  It does not show that the purported mistake occurred despite ordinary care.  It does not show that the parties can be placed in status quo.  That Beasley does not remember signing the assignment is irrelevant to whether he assigned his intellectual property rights to USPPS because it does not prove that the assignment was the result of a mutual mistake.  Likewise, Beasley's assertion that he did not intend to assign his intellectual-property rights is irrelevant because he cannot show that signing the document was a result of a mutual mistake.  Beasley has not shown that the assignment of his intellectual property rights was the result of a mutual mistake.  Having failed to show that he did not assign his intellectual-property rights, Beasley cannot show that he has standing to sue the defendants and the defendants are entitled to dismissal of Beasley's complaint.

### Beasley's Motion to Amend his Complaint

In his motion to amend his complaint, Beasley explained that USPPS is a Texas limited partnership in which USPPS Management, LLC, is the sole general partner and Beasley is the chief executive officer and sole manager.  In his affidavit, Beasley attested that he is the "owner of sole proprietorships that have done business as either USPPS or USPostables.[29]  Beasley maintains that he should be able to add USPPS as a plaintiff because the defendants have placed in issue that USPPS is a proper party to the lawsuit and the addition of USPPS as a plaintiff will moot the defendants' argument that he has no standing.

Where the deadline for amending pleadings has passed, a party must show good cause to amend.  In determining whether the good-cause standard has been met, the court considers four factors:  (1) the movant's explanation for the failure to timely move for leave to amend, (2) the

---

[29]*See* docket entry # 85, exh. A.

importance of the amendment, (3) potential prejudice in allowing the amendment, and (4) the availability of a continuance to cure such prejudice.[30]  Although Beasley did not specifically address these factors, there is another reason why Beasley should not be permitted to amend his complaint now:  A plaintiff without standing cannot amend his complaint to add a plaintiff who has standing because he has no power to do so—standing is determined at the outset of the lawsuit.[31]  Beasley had no standing to file this lawsuit because he had assigned his rights to his intellectual property prior to filing the lawsuit.  Beasley has no standing, so he cannot amend his complaint.  Beasley also asked to add Neil Duchez as a defendant, but the district court need not consider this request because Beasley has not shown that he had standing at the outset of this lawsuit.

### The Defendants's Request for Sanctions

The defendants contend that Beasley has always known about the assignment and that during discovery he has consistently denied the assignment's existence.  The defendants maintain that they discovered the Intellectual Property Assignment as a result of their discovery from third parties and that Beasley has never disclosed the assignment even though his business former attorney sent him a copy of the assignment on January 19, 2006.  The defendants seek sanctions in the form of their attorney's fees under Rule 37 of the Federal Rules of Civil Procedure.  Because they maintain that Beasley's attorney for this lawsuit—Jim Willingham — participated in discovery abuse, they maintain that the sanction should be shared between Beasley and

---

[30]*See S&W Enterprises v. SouthTrust Bank of Ala.*, 315 F.3d 533, 536 (5th Cir. 2003).

[31]*See Summit Office Park v. U.S. Steel Corp.*  639 F.2d 1278, 1283 (5th Cir. Unit A 1981); *Paradise Creations v. UV Sales*, 315 F.3d 1304, 1309 (Fed. Cir. 2003).

Willingham.

A district court has discretion to impose sanctions for discovery abuse under Rule 37.

The district court may award attorney's fees under Rule 37(c)(1) if a party withholds responsive,

non-privileged documents during discovery.  Specifically, the rule provides the following:

> A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1). . . is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed.  In addition to or in lieu of this sanction, the court, on motion and after affording an opportunity to be heard, may impose other appropriate sanctions. In addition to requiring payment of reasonable expenses, including attorney's fees, caused by the failure, these sanctions may include any of the actions authorized under Rule 37(b)(2)(A), (B), and (C). . . .[32]

In addition, the district court may award attorney's fees under Rule 37(d) for failing to answer

interrogatories or failing to respond to requests for production.  Rule 37(d) provides the

following:

> If a party. . . designated under Rule 30(b)(6) or 31(a) to testify on behalf of a party fails. . . (2) to serve answers or objections to interrogatories submitted under Rule 33, after proper service of the interrogatories, or (3) to serve a written response to a request for inspection submitted under Rule 34, after proper service of the request, the court in which the action is pending on motion may make such orders in regard to the failure as are just, and among others it may take any action authorized under subparagraphs (A), (B), and (C) of subdivision (b)(2) of this rule. . . . In lieu of any order or in addition thereto, the court shall require the party failing to act or the attorney advising that party or both to pay the reasonable expenses, including attorney's fees, caused by the failure. . . .[33]

This rule is broad enough to encompass responses which are evasive or misleading.[34]

The defendants argue that they are entitled to attorney's fees under these rules because

---

[32]FED. R. CIV. P. 37.

[33]FED. R. CIV. P. 37(d).

[34]*See Coane v. Ferrara Pan Candy Co.*, 898 F.2d 1030, 1032 (5th Cir. 1990).

Beasley repeatedly denied the existence of the Intellectual Property Assignment during discovery and failed to produce the Intellectual Property Assignment even though he received the original execution copy of the assignment from his previous business attorney in January 2006.  To show this, the defendants produced the evidence discussed below.

First, the defendants submitted a copy of a letter, addressed to Beasley, from Paulette Gerhart, a senior paralegal with Fulbright & Jaworski LLP, stating that Gerhart was forwarding Beasley's original minute books for USPPS Management, LLC. and USPPS, Ltd.[35]  The letter is dated January 19, 2006.  Second, the defendants presented excerpts from the deposition of Daryl L. Lansdale, Jr., an attorney at Fulbright & Jaworski.[36]  The deposition was taken on February 2, 2007.  Answering questions about Beasley's contribution to the formation of USPPS Management, LLC. and USPPS, Ltd, Lansdale testified that he thought that Beasley contributed the intellectual property related to the Postables concept and that he thought that the minute book included an assignment of intellectual property rights.[37]  Fulbright & Jaworski no longer had the original minute books, but the law firm made a copy of the minute books.  That copy indicates the assignment was included in the documents sent to Beasley.  Although this evidence isn't conclusive, it indicates that Beasley received a copy of the Intellectual Property Assignment in January 2006.

Third, the defendants presented an excerpt from Beasley's responses to Avery's request for documents.  Willingham provided Beasley's responses on May 11, 2006.  The relevant

---

[35]Docket entry # 93, exh. J.

[36]Docket entry # 93, exh. F.

[37]*Id*. at p. 68, lines 3-10.

request and response follows:

**REQUEST FOR PRODUCTION NO. 91:**

Any and all DOCUMENTS that REFLECT, REFER TO, or RELATE TO an assignment of rights to the FIRST PATENT APPLICATION, the SECOND PATENT APPLICATION or RELATED APPLICATIONS from BEASLEY to USPPS.

**RESPONSE:** Documents responsive to this request are either included herewith or have been previously produced.  However, no such assignment occurred.[38]

This evidence reflects that Beasley failed to produce the Intellectual Property Assignment and denied that he assigned his interests in the patent applications even though he had assigned those interests.

Fourth, the defendants presented Beasley's deposition.[39]  The deposition was taken on June 1, 2006.  During the deposition, the defendants' attorney questioned Beasley about whether he had assigned his interests in the patent applications.  The relevant testimony follows:

| | |
|---|---|
| The defendant's attorney: | So you never assigned any interest in the patent applications to USPPS? |
| Beasley: | We never got a patent. |
| The defendant's attorney: | That's not my question.  You never assigned any interest in the patent applications – |
| Beasley: | No. |
| The defendant's attorney: | – either in the first or the second to USPPS? |
| Beasley: | No.[40] |

---

[38]Docket entry # 93, exh. D.

[39]Docket entry # 93, exh. A.

[40]*Id*. at p. 88, lines 14-21.

12

This evidence reflects that Beasley denied assigning his interest in the patent applications, even though he had assigned those interests several years before the deposition.

Fifth, the defendants presented Beasley's responses to Avery's second set of requests for admissions.  Those requests sought admissions about the ownership of the patent applications. Willingham provided Beasley's responses on July 31, 2006.  The relevant requests and answers follow:

> **REQUEST FOR ADMISSION NO. 16**:
> Admit that YOU never assigned YOUR rights in THE PATENT APPLICATIONS to USPPS.
>
> **ANSWER**:
> Admit.
>
> **REQUEST FOR ADMISSION NO. 18:**
> Admit that YOU assigned YOUR rights in THE PATENT APPLICATIONS to USPPS.
>
> **ANSWER**:
> Deny.[41]

This evidence also reflects that Beasley denied assigning his interest in the patent applications, even though he had assigned those interests several years before providing his responses.

Sixth, the defendants presented Beasley's responses to Avery's second set of interrogatories.  Willingham provided Beasley's responses on July 31, 2006.  The relevant interrogatories and responses follow:

> **INTERROGATORY NO. 15:**
> Explain the complete basis for YOUR contention that PATENT APPLICATIONS were not an assert of USPPS in 2001 and 2002 because the PATENT APPLICATIONS had not yet issued.

---

[41]Docket entry # 93, exh B.

**ANSWER:**
It was Plaintiff's intention to assign any rights to the patent application only after the patent(s) had been issued.

**INTERROGATORY NO. 16:**
        Describe, in detail, the facts surrounding YOUR decision not to assign THE PATENT APPLICATIONS to USPPS.

**ANSWER:**
It was Plaintiff's intention to assign any rights to the patent application only after the patent(s) had been issued.[42]

These responses support Beasley's position that he intended to assign his interests in the patent applications to USPPS once he obtained a patent. It also reflects that Beasley denied having assigned his interests in the patent applications even though he had done so.

In response, Beasley and Willingham assert that they first learned about the assignment on or about January 10, 2007 when they were asked to identify the assignment in interrogatories propounded by the defendants. To demonstrate that they did not know about the assignment earlier, Beasley and Willingham presented the evidence discussed below.

First, they presented documents which reflect that the defendants sought to have Beasley assign his interests in the invention of personalized postage stamps to USPPS, Ltd.[43] Those documents show that the defendants drafted assignments to transfer title of each of Beasley's patent applications to USPPS in November 2001, but that Beasley had not signed the assignments as of June 3, 2002. This evidence reflects that the defendants did not know that Beasley had assigned his interests in the patent applications. The evidence is also consistent with Beasley's position that he did not intend to assign his interests in the patent applications until he

---

[42]Docket entry # 93, exh. C.

[43]Docket entry # 115, exh. B.

14

had obtained a patent.

Second, Beasley and Willingham presented excerpts from Beasley's deposition in which Beasley consistently denied that he had assigned his interests in the patent applications. He testified that he intended to assign his interests once he obtained a patent. This evidence is consistent with Beasley's position.

Third, Beasley and Willingham presented letters regarding a subpoena that the defendants' attorney served on Fulbright & Jaworski.[44]  In the first letter—dated December 8, 2006—Fulbright and Jaworski informed Beasley that the defendants' attorney had subpoenaed the law firm's files relating to its work for Beasley, asked Beasley whether he wanted to assert attorney/client privilege, and forwarded documents to Willingham for review.  In the second letter—dated December 18, 2006—the defendant's attorney advised Fulbright & Jaworski that Willingham would produce the responsive documents and that no further action was needed from Fulbright & Jaworski.  In the third letter—dated December 19, 2006—Willingham forwarded the documents he received from Fulbright & Jaworski.  The first and third letters refer to Bates-stamped documents FJ0001- FJ0732.  The Intellectual Property Assignment is Bates-stamped FJ0222-FJ0226.  This evidence shows that Beasley knew, or should have known, about the Intellectual Property Assignment on or about December 8, 2006 because the documents Fulbright & Jaworski sent him included the Intellectual Property Assignment.

"The Rules [of discovery] are a means—not an end of Justice. 'In final analysis, a court has a responsibility to do justice between man and man. . . .'"[45]  Here, doing absolute justice

---

[44]Docket entry # 115, exh. D.

[45]*B.F. Goodrich Tire Co. v. Lyster*, 328 F.2d 411, 416 (5th Cir. 1964).

between man and man requires a credibility assessment: is Beasley telling the truth about not remembering assigning his interests or is he being untruthful.  Certainly, admitting that he has always know that he assigned his interests in not in his interests.  Although he has consistently denied making he assignment, it is difficult to believe that Beasley does not recall signing the Intellectual Property Assignment.  The document is not complex—the document is one-and-one-half pages long and uses straight-forward language.  Beasley's answers during his depositions indicate that he understands the difference in assigning his interests in his intellectual property and in assigning his interests in the patent applications.  Beasley's awareness of the difference contradicts his position that he does not remember assigning his interests in the patent applications because the difference is one that would have prevented Beasley from signing the assignment.  While Beasley insists that he never intended to assign his interests in the patent applications until he obtained a patent, it is also difficult to believe that a reputable firm like Fulbright & Jaworski would have drafted the Intellectual Property Assignment and presented it to Beasley for signature without first confirming that Beasley intended to assign his interests in the patent applications.  On the other hand, the full consequences of a legal document often allude those who sign legal documents, making it quite possible to sign a legal document without fully understanding the consequences.  But even if Beasley does not recall signing the assignment, and even if he did not intend to assign his interests in the patent applications, the defendants have presented evidence demonstrating that Beasley signed the assignment and that he denied the assignment throughout discovery.  This evidence establishes discovery abuse based on a failure to disclose a responsive, non-privileged document.  Because Beasley failed to provide substantial justification for not disclosing the assignment and he has not shown that the failure was harmless,

16

the defendants are entitled to sanctions in the form of attorney's fees.

In determining the amount of sanctions, the district court should consider the following factors: (1) What conduct is being punished or is sought to be deterred by the sanction?, (2) What expenses or costs were caused by the violation of the rule?, (3) Were the costs or expenses "reasonable," as opposed to self-imposed, mitigatable, or the result of delay in seeking court intervention?, (4) Was the sanction the least severe sanction adequate to achieve the purpose of the rule under which it was imposed?[46]

What conduct is being punished or is sought to be deterred by the sanction?  Beasley should be sanctioned for failing to disclose the assignment of his interests in his patent applications.  Beasley does not deny that the signature of the assignment is his signature.  Instead, he insists that he does not recall signing the assignment and that he did not intend to assign his interests until he obtained a patent.  This position, however, does not overcome the failure to disclose a responsive, non-privileged document.  The evidence indicates that he received a copy of the assignment in January 2006 and he did not disclose it.

What expenses or costs were caused by the violation of the rule?  Even if Beasley does not recall signing the assignment, the defendants have had to engage in considerable discovery to prove that Beasley assigned his interests in the patent applications in order to defend themselves.  This discovery has shown that Beasley did not have standing to bring this lawsuit.  In the meantime, the defendants have had to defend themselves for over two and a half years.  There can be no doubt that this defense has required great expense.  Because Beasley did not disclose the assignment, the defendants had discover the assignment through third party discovery.  The

---

[46]*See Topalian v. Ehrman*, 3 F.3d 931, 937 (5th Cir. 1993).

costs of that discovery should be borne by Beasley.

Were the costs or expenses "reasonable," as opposed to self-imposed, mitigatable, or the result of delay in seeking court intervention? Beasley has consistently denied that he assigned his interests in the patent applications, forcing the defendants to discover the assignment on their own. Although I would be willing to give Beasley the benefit of the doubt in regard to his memory, Beasley should at least be required to pay the defendants' costs to confirm their suspicions about whether Beasley had assigned his rights. The defendants have indicated that they first learned that Beasley might have assigned his interests in the patent applications when they received documents they requested from USPPS's former accountants.[47] The defendants did not indicate when they received the documents that gave rise to their suspicions, but they stated that they issued the third-party subpoenas that led to the discovery on June 13, 2006. The first document is an undated draft of the USPPS Partnership Agreement with an attached Schedule A reflecting a capital contribution by Beasley of $737,696.07.[48] The second document is a memo dated June 28, 2001, providing tax advice related to the formation of USPPS. The memo indicates that Beasley had contributed "Product as developed to date (intellectual property)."[49] The third document is the deposition of the accountant's representative. In the deposition, the representative testified that he understood that Beasley had assigned his intellectual property rights to USPPS.[50] From this point, it appears that the defendants diligently pursued their

---

[47]See docket entry # 91, p. 7.

[48]Docket entry # 93, exh. AA.

[49]Docket entry # 93, exh. Y.

[50]Docket entry # 93, exh. G.

suspicions that Beasley had assigned his intellectual property, ultimately discovering that Beasley had assigned his interests in the patent applications.

Was the sanction the least severe sanction adequate to achieve the purpose of the rule under which it was imposed? The defendants ask for all their attorney's fees for defending themselves in the lawsuit. In the alternative, they ask for their costs in discovering the truth about the assignment. Because I would be willing to give Beasley the benefit of the doubt in regard to his memory, the latter of these two options is appropriate. The defendants have indicated that they first suspected Beasley had assigned his interests in the patent applications in June 2006. That point in time triggered the defendants' efforts to discover the truth about the assignment. Awarding the defendants the costs of confirming their suspicions is the least severe sanction because it give Beasley the benefit of loss of memory.

## Whether Willingham Should Share in Paying the Costs

The defendants maintain that Willingham should share in an award of sanctions. "A district court has discretion, under both . . . [Rule 37] and its inherent powers, to sanction attorneys for discovery abuse. Personal sanctions like those here are meant to punish people personally culpable."[51] "Sanctions under Rule 37 are limited to specific discovery violations, serving foremost to penalize misconduct, especially when levied against an attorney personally."[52]

Although the defendants have presented evidence that suggests that Beasley should have

---

[51]*Sample v. Miles*, Nos. 05-50624 & 05-50727, 2007 LEXIS 3027, at *10 (5th Cir. Feb. 9, 2007).

[52]*Sample*, Nos. 05-50624 & 05-50727, 2007 LEXIS 3027, at *10 n.14.

known about the assignment in January 2006—when he received the minute books—they

presented no evidence showing that Willingham knew about the assignment at that time.  If

Beasley does not remember making the assignment, he would not have told Willingham that he

had.  If Beasley remembers and he is simply denying that he made the assignment, it is unlikely

that Willingham would have had any reason to question Beasley.  Because Fulbright & Jaworski

sent the minute books to Beasley, not Willingham, it does not logically follow that Willingham

engaged in discovery abuse because his client obtained a copy of the Intellectual Property

Assignment when he received the minute books.  Notably, neither Beasley nor Willingham has

presented the minute books to demonstrate that neither of them knew about the assignment in

January 2006.  Instead, they assert that they did not know about the assignment until they were

asked to identify it on or about January 10, 2007 in interrogatories propounded by the defendants.

Although presentation of the original minute books would put the issue on knowledge in January

2006 to rest, Beasley has not presented those documents.  Nevertheless, Willingham should have

known about the assignment some time in December 2006 because that is the time he sent the

documents that Fulbright & Jaworski sent to Beasley to the defendants' attorney.  That is the

point Willingham should have reacted.

Willingham did react.  He reacted by moving to amend Beasley's complaint to add

USPPS as a plaintiff.  Although my discussion of the motion to amend explains why an

amendment will not cure standing in this case, Willingham's effort represents client advocacy,

not misconduct.  I am not convinced that Willingham engaged in misconduct or that he is

personally culpable for what occurred.  He should not share in responsibility for the sanctions

award.

**Recommendation**

Beasley assigned his interests in the patent applications that serve as the basis of his claims.  Because he assigned his interests, he had no standing to file this lawsuit.  Consequently, I recommend GRANTING the defendants' motion to dismiss for lack of standing (docket entry # 91).  Beasley has not shown good cause for amending his complaint at this late date and he has no standing to amend his complaint; consequently, I recommend DENYING his motion to amend his complaint (docket entry # 85).  Beasley failed to produce the assignment in response to specific discovery requests and Beasley denied the existence of the assignment throughout discovery.  By doing so, he abused the discovery process and forced the defendants to discover the truth about the assignment on their own.  I have no way of determining whether Beasley actually remembers assigning his interests in the patent applications without making a finding about Beasley's credibility. As a way of doing justice, I recommend GRANTING the defendants' request for sanctions and AWARDING sanctions in the form of attorney's fees associated with confirming the defendants' suspicions that Beasley had assigned his interests in the patent applications.  If the district court accepts these recommendations, the district court can deny the remaining pending motions (docket entry #s 120, 123, 132, 141 & 145) as moot.

**Instructions for Service and Notice of Right to Object/Appeal**

The United States District Clerk shall serve a copy of this memorandum and recommendation on all parties who have entered an appearance, by either (1) electronic transmittal to all parties represented by attorneys registered as a "Filing User" with the Clerk of Court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested. Written objections to this Memorandum and Recommendation must be filed within 10 days after

21

being served with a copy of same, unless this time period is modified.[53]  **Such party shall file the objections with the Clerk of the Court, and serve the objections on all other parties and the Magistrate Judge.**   A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections.  A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court.[54]  Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this Memorandum and Recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district Court.[55]

      **SIGNED** on May 25, 2007.

                              NANCY STEIN NOWAK
                              UNITED STATES MAGISTRATE JUDGE

---

[53] 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

[54] *Thomas v. Arn*, 474 U.S. 140, 149-152 (1985); *Acuña v. Brown & Root, Inc.*, 200 F.3d 335, 340 (5th Cir. 2000).

[55] *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).